# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEMETRIC SCOTT,

                Plaintiff,

v.

WILLIAM J. POLLARD and
MEGHAN RODRIQUEZ,

                Defendants.

Case No. 17-CV-140-JPS

**ORDER**

      This matter comes before the court on plaintiff Demetric Scott's ("Scott") second motion for leave to proceed without prepayment of the filing fee (Docket #14), motion to appoint counsel, (Docket #16), motion to amend/correct the complaint, (Docket #17), and for screening of the amended complaint, (Docket #13). The court granted Scott's first motion for leave to proceed without prepayment of the filing fee on March 24, 2017. (Docket #10). Therefore, it will deny as moot Scott's second motion for leave to proceed without prepayment of the filing fee.

**1.    Plaintiff's Motion to Amend/Correct the Complaint**

      Scott asks to amend/correct his complaint to include Meghan Rodriquez as a defendant. Scott listed Rodriquez as a defendant in his original complaint, (Docket #1), but omitted her from the caption in the Amended Complaint. The body of the Amended Complaint, (Docket #13), includes facts and allegations against Rodriquez and states a claim against her (as discussed below). Therefore, the court will grant plaintiff's motion to amend/correct the complaint.

## 2. Screening of the Amended Complaint

The Prison Litigation Reform Act requires courts to screen complaints brought by inmates seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts but must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The complaint must contain sufficient factual matter that, when accepted as true, "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

Federal courts follow the two-step analysis set forth in *Twombly* to determine whether a complaint states a claim. *Iqbal*, 556 U.S. at 679. First,

the court determines whether the plaintiff's legal conclusions are supported by factual allegations. *Id*. Legal conclusions not support by facts "are not entitled to the assumption of truth." *Id*. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### 2.1 Factual Allegations

Scott is an inmate at the Waupun Correctional Institution ("Waupun"). (Docket #13). Meghan Rodriquez ("Rodriquez") is a Correctional Officer at Waupun and William Pollard ("Pollard") is Warden at Waupun. (Docket #13 at 2-3).

On March 20, 2014, Rodriquez distributed bedtime medication at around 8:50 p.m. *Id*. at 3. Rodriquez tried to give Scott five pills. *Id*. Scott explained that he only was to receive three pills at bedtime (Mirtazapine, Divalproex, and Risperidole) and asked Rodriquez to check the dosage on his medication chart. *Id*. Scott also told her that his doctor would not change his medication without examining him, and he had received incorrect medication once before, in August 2013, which had caused him to vomit within 30 minutes. *Id*. Rodriquez responded "how and the fuck should I know any of this, I just work here." *Id*. Scott took all five pills that Rodriquez gave him, and within 45 minutes, he was vomiting all over his bed, floor, and toilet. *Id*. Around 10:20 p.m., "3rd shift" saw that Scott was sick and immediately called medical personnel. *Id*.

The next day, on March 21, 2014, Scott went to the Health Services Unit for an appointment with Nurse Larson (not a defendant). *Id*. After Scott told Larson what happened, Larson suspected that Rodriquez had

given him the wrong inmate's medication. *Id*. Larson made this statement in the presence of Correctional Officer Gorman (also not a defendant). *Id*.

Scott explains that he has found numerous errors in his medical records in the past. *Id*. Examples include failure to note the dosage he received on a particular day and failure to note whether or not he actually took his medication that day. *Id*. In some cases, the entries simply stated "R," which could mean medication "received" or medication "refused." *Id*.

For relief Scott seeks "compensatory damages," "punitive damages," and "monetary damages." *Id*. at 5.

### 2.2 Analysis of Factual Allegations

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that the defendants 1) deprived him of a right secured by the Constitution or laws of the United States, and 2) acted under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

The Eighth Amendment prohibits prison officials from showing "deliberate indifference" to a substantial risk of serious harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 829, 834 (1994). Jail officials act with deliberate indifference when they know of a substantial risk of serious harm and either act or fail to act in disregard of that risk. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Inmates have a "serious harm" if the inmate's condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.*

For the reasons discussed below, Scott may proceed with an individual capacity claim against Rodriquez and an official capacity claim against Pollard.

### 2.2.1 Individual Capacity Claims

Individual liability under § 1983 is typically based on a defendant's personal involvement in the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [her] direction or with [her] knowledge and consent." *Id*. (quoting *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). She "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

Scott may proceed with an Eighth Amendment claim against Rodriquez. He told Rodriquez that she may have given him the wrong medication dosage. It is unclear whether Rodriquez checked his medical chart, but she gave him five pills. Scott took the medication and within 45 minutes became very ill. He later learned that Rodriquez likely gave him someone else's medication. Thus, Scott may proceed with an Eighth Amendment individual capacity claim against Rodriquez.

Scott does not allege facts showing Pollard's direct involvement in the incident. Scott neither notified Pollard about the problems with his medication nor is Pollard alleged to have acted or failed to act. Thus, Scott may not proceed with an individual capacity claim against Pollard.

### 2.2.2 Official Capacity Claims

A suit against a state official in his or her official capacity is a suit against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

(1989). The Eleventh Amendment bars suits for monetary damages against states. *Id.* at 66. Consequently, official capacity claims are limited to injunctive relief. *See id.* at 71 n.10.

To procced with an official capacity claim, Scott must identify a governmental entity's "policy or custom" that violated his constitutional rights. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The governmental entity itself must be the "moving force" behind the alleged constitutional deprivation. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Scott must set forth a "specific pattern of series or incidents" which demonstrates an unconstitutional policy or custom, and he must allege more than a "single deprivation alone." *See Hossman v. Blunk*, 784 F.2d 793, 796-97 (7th Cir. 1986).

Scott's amended complaint only specifically asks for monetary damages. *See* (Docket #13 at 5). However, he also states that correctional officers are "untrained and inadequate" to distribute prescription medication, and only a trained medical professional, as defined by Wis. Stat. § 441.10, should do this task. *Id.* at 3. Thus, he also seeks some form of injunctive relief regarding Waupun's prison policy allowing correctional officers to distribute prescription medication.

Scott takes prescription medication several times a day and has received the wrong medication from correctional staff on at least two occasions. Both times he became very ill. Therefore, Scott may proceed with an Eighth Amendment official capacity claim against Pollard. *See Goodvine v. Meisner*, No. 14-CV-278-WMC, 2016 WL 1274622, at *4 (W.D. Wis. Mar. 31, 2016); *see also Steed v. Doe*, No. 14-CV-747-JDP, 2016 WL 1179230, at *4 (W.D. Wis. Mar. 23, 2016).

Scott has no basis for asserting an official capacity claim against Rodriquez. He fails to allege facts showing that she is or was responsible for creating or implementing prison policy regarding the distribution of prescription medication by correctional staff. Thus, he may not proceed with an official capacity claim against Rodriquez.

3.  **Plaintiff's Motion to Appoint Counsel**

Scott asks for the appointment of counsel, and he attaches his current education level test scores in reading, language, and math to show he needs legal assistance. (Docket #16). He states that "[t]o force [him] to represent himself would be the equivalent of a 5-year old child performing a heart transplant." *Id*.

In a civil case the court has discretion to recruit counsel for individuals unable to afford one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). However, the plaintiff must first make reasonable efforts to hire counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). In this district's "Answers to Prisoner Litigants' Common Questions," it states, "[b]efore the court will consider trying to find an attorney to volunteer to represent a litigant in a civil action, the litigant must attempt to find an attorney on his or her own." That generally means that a plaintiff must contact at least three attorneys and provide the court with (1) the attorneys' names, (2) their addresses, (3) the date and the way the plaintiff attempted to contact them, and (4) the attorney's responses.

After the plaintiff demonstrates that he has made a reasonable attempt to hire counsel, the court will then decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing

*Pruitt*, 503 F.3d at 655). The court looks not only at a plaintiff's ability to try his case but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.* "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

Most incarcerated litigants do not have law degrees and have an education level below that of a trained lawyer. The court cannot appoint counsel for every incarcerated person who asks. Therefore, it must ensure that each incarcerated litigant does what is required of him before the court considers recruiting counsel for him. Scott states that he has made "reasonable efforts to find a lawyer on his own" but he has not explained what he has done to satisfy this requirement. (Docket #16.)

Further, the court has no reason to believe that Scott's limited education will prevent him from prosecuting his case at this stage of the litigation. Scott's filings thus far have been clear and coherent. When the court asked him to file an amended complaint, he was able to do so, and he cured the deficiencies that prevented his original complaint from proceeding past screening. He understood the court's order and cited relevant facts and caselaw to state a claim upon which relief could be granted.

It may be that Scott does not know how to proceed at this point in the litigation. All he must do right now is wait for defendants to file an answer. If and when defendants file an answer, the court will issue a scheduling order setting deadlines for discovery and dispositive motions.

The scheduling order will include further instructions on how to procced with this litigation. Scott can ask defendants to answer his interrogatories, Fed. R. Civ. P. 33, and he may ask them to produce documents that he believes support his version of the events, Fed. R. Civ. P. 34. He will also be able to present his version of the events through an affidavit or unsworn declaration, under 28 U.S.C. § 1746, in response to any motion for summary judgment that defendants might file. Therefore, the court will deny plaintiff's motion to appoint counsel without prejudice.

Accordingly,

**IT IS ORDERED** that the plaintiff's second motion for leave to proceed without prepayment of the filing fee (Docket #14) be and the same is hereby **DENIED** as moot;

**IT IS FURTHER ORDERED** that the plaintiff's motion to amend/correct the complaint (Docket #17) be and the same is hereby **GRANTED**. The Clerk of Court will amend the caption to reflect Meghan Rodriquez as a current defendant;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's amended complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Meghan Rodriquez and William Pollard. Rodriquez and Pollard shall file a responsive pleading to the amended complaint within sixty (60) days of receiving electronic notice of this order; and

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #16) be and the same is hereby **DENIED** without prejudice.

Dated at Milwaukee, Wisconsin, this 19th day of June, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge